AE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

JAN 1 7 2006
JAN 17 2006
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. 05 CR 76 |
| | ) | |
| MICHAEL ACOSTA | ) | Hon. Harry D. Leinenweber |

PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, MICHAEL ACOSTA, and his attorneys, CYNTHIA GIACCHETTI and GEORGE COLLINS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 05 CR 76.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant, MICHAEL ACOSTA, and his attorneys, CYNTHIA GIACCHETTI and GEORGE COLLINS, have agreed upon the following:

1. Defendant acknowledges that he has been charged in the indictment with mail fraud, in violation of Title 18, United States Code, Section 1341 (Counts One and Two) and with making materially false statements to agents of the Federal Bureau of Investigation, in violation of Title 18, United States Code, Section 1001(a)(2) (Count Three).

2. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

3. Defendant fully understands the nature and elements of the crimes with which he has been charged.

4. Defendant will enter a voluntary plea of guilty to Count One of the indictment in this case.

5. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

From in or about March 2004, and continuing to in or about January 2005, in the Northern District of Illinois, Eastern Division, MICHAEL J. ACOSTA, defendant herein, knowingly devised and attempted to devise a scheme to defraud and to obtain money and property from Company A and Individual A by means of materially false and fraudulent pretenses and representations, and on or about April 13, 2004, caused the use of an interstate carrier for the purpose of executing the scheme and attempting to do so.

Specifically, in 2004, defendant was employed as a Commander with the Chicago Police Department ("the Department") with command responsibilities over officers assigned to Chicago O'Hare and Midway Airports.

The Department held an annual ceremony in honor of Chicago Police Officers, the Police Recognition Ceremony. The Ceremony was a charitable luncheon event to which individual and corporate sponsors contributed money.

Officers at O'Hare maintained a checking account, the "Chicago Police O'Hare Account." Typically, the account was used to maintain funds raised for an annual golf outing and for retirement gifts. The account was not an official bank account of the Chicago Police Department.

In or about March 2004, defendant spoke to an employee of Company A and discussed with the employee a contribution from Company A to the Police Recognition Ceremony. Defendant agreed to accept a $7,000 donation from Company A on behalf of the Police Recognition Ceremony and falsely and fraudulently represented to the Company A employee that the donation would go to the Ceremony. Defendant caused the $7,000 check to be deposited into the Chicago Police O'Hare Account on or about April 19, 2004.

On or about April 19, 2004, Defendant caused a $5,000 check from the Chicago Police O'Hare Account to be paid to the Police Recognition Ceremony. Defendant personally delivered the $5,000 check to the officer collecting donations for the Ceremony. Defendant fraudulently represented to the officer that Company A was donating $5,000 to the Ceremony, when in fact, as defendant well knew, Company A had intended to donate $7,000.

On or about April 19, 2004, defendant caused a $2,000 check from the Chicago Police O'Hare Account to be paid to the order of "MICHAEL ACOSTA," and defendant deposited the $2,000 check into his personal bank account.

A few days earlier, on or about April 13, 2004, defendant accepted a $2,000 check paid to the order of the "Police Recognition Luncheon" from Individual A. John Boyle introduced

Individual A to defendant. Defendant falsely and fraudulently represented to Individual A that the $2,000 donation would benefit the Police Recognition Ceremony. Defendant caused Individual A's $2,000 donation to be deposited into the Chicago Police O'Hare Account on or about April 16, 2004. Defendant never informed the Police Recognition Ceremony that Individual A intended to donate to the Ceremony.

Of the $9,000 defendant solicited and obtained for the benefit of the Police Recognition Ceremony from Company A and Individual A, defendant provided only $5,000 to the Ceremony. Defendant converted the remainder of the funds for his personal benefit.

In or about September 2004, defendant MICHAEL ACOSTA submitted a Gift Acknowledgment form to Company A, in which defendant falsely and fraudulently stated that Company A's contribution to the Police Recognition Ceremony was $7,000, when in truth and in fact as defendant well knew, only $5,000 in Company A funds were provided to the Police Recognition Ceremony. Defendant caused the Gift Acknowledgment form to be sent to Company A via the United States Mail.

On or about April 13, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, defendant, for purposes of executing the scheme to defraud and attempting to do so, did knowingly cause to be delivered by the Federal Express Company, an interstate carrier, according to the direction thereon, an envelope containing a $7,000 check addressed to "Chicago Police Department, O'Hare Field Comm MIKE ACOSTA," at a Chicago, Illinois address, in violation of Title 18, United States Code, Section 1341.

6. The defendant, for purposes of computing his sentence under the Federal Sentencing Guidelines, stipulates to the following additional conduct pursuant to U.S.S.G. § 1B1.2(c) :

On or about October 6, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, MICHAEL J. ACOSTA, defendant herein, did knowingly and willfully make materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the Federal Bureau of Investigation, an agency within the executive branch of the Government of the United States; in violation of 18 U.S.C. § 1001(a)(2).

Specifically, on or about October 6, 2004, FBI Agents interviewed defendant concerning his relationship with John Boyle. Agents questioned defendant about whether defendant provided favors to or received requests from John Boyle in connection with ACOSTA's position with law enforcement. Defendant falsely told agents that: John Boyle never asked defendant for any person's arrest record and criminal history information; defendant would not provide John Boyle or anyone else with criminal history information; and defendant could not recall any favors requested by John Boyle that related to ACOSTA's position in law enforcement.

In truth and in fact as defendant well knew, ACOSTA did provide criminal history information to John Boyle on at least one occasion in April 2004 and Boyle did request favors from defendant that were related to defendant's position in law enforcement.

7. For purposes of calculating the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, the parties agree and disagree on the following points:

(a) The parties agree the Guidelines are calculated pursuant to the November 2003 edition of the Guidelines Manual.

(b) The parties agree that, pursuant to Guideline § 2B1.1(b)(7), the base offense level is 10, because the offense involved a misrepresentation that the defendant was acting on behalf of a charitable organization or government agency.

(c) The position of the government is that pursuant to Guideline § 3B1.3, the offense level is increased by 2 levels because the defendant abused a position of trust in a manner that significantly facilitated the commission or concealment of the offense. The defendant does not agree that Guideline § 3B1.3 applies.

(d) The following calculation applies to the stipulated offense: pursuant to Guideline § 2B1.1(a), the base offense level is six.

(e) The position of the government is that pursuant to Guideline §§ 3D1.1, 3D1.2 and 3D1.4, the offense of conviction and the stipulated offense constitute two Groups and 1 and ½ Units. The position of the government is that therefore, the offense level is increased by 1 level. The defendant does not agree that the offense of conviction and the stipulated offense constitute two Groups.

(f) Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for his actions, within the meaning of Guideline § 3E1.1, a two-level reduction in the offense level is appropriate.

(g) Based on the information presently known to the government, defendant's criminal history category is I.

(h) The defendant and his attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this Agreement. The defendant understands that the Probation Department will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

8. Errors in calculations or interpretation of any of the Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or court setting forth the disagreement as to the correct Guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw his plea on the basis of such corrections.

9. Defendant understands that the crime to which he is pleading guilty carries the following penalties: a maximum penalty of 20 years imprisonment; a maximum fine of the greatest of (a) $250,000, (b) twice the gross gain to defendant, or (c) twice the gross loss to the victims; any restitution ordered by the Court; and a term of supervised release of not more than three years.

10. Defendant understands that, in imposing the sentence, the Court will be guided by the United States Sentencing Guidelines. The defendant understands that the Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

11. Defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $100 on each

count of conviction, in addition to any other penalty imposed. The defendant agrees to pay the special assessment of $100 at the time of sentencing with a check or money order made payable to the Clerk of the U.S. District Court.

12. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, and considering each count separately, it was persuaded of defendant's guilt beyond a reasonable doubt.

(c) If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(e) At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

13. Defendant understands that by pleading guilty he is waiving all the rights set forth in paragraph 12. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may appeal only the validity of his guilty plea and his sentence.

14. Defendant understands that the indictment and this Plea Agreement are matters of public record and may be disclosed to any party.

15. Nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from the defendant.

16. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

17. At the time of sentencing, each party shall be free to recommend any sentence it deems appropriate.

18. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose the maximum penalties as set forth in paragraph 9 above. However, the sentencing court is obligated to consult and take into account the Sentencing Guidelines in imposing a reasonable sentence. The defendant further acknowledges that if the court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

19. Regarding restitution, the parties agree that, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3663A, the amount of restitution owed to Company A is $2,000, and to Individual A is $2,000, and that the Court shall order defendant to make restitution in this amount, minus any credit for funds repaid prior to sentencing. The defendant understands that Title 18, United States Code, Section 3664 and Sections 5E1.1 and 5E1.2 of the Sentencing Guidelines set forth the factors to be weighed in setting a fine and in determining the schedule, if any, according to which any restitution is to be paid in this case. The defendant agrees to provide full and truthful information to the Court and United States Probation Officer regarding all details of his economic circumstances in order to determine the proper fine and restitution schedule according to which the defendant may be ordered to pay. Defendant understands that providing false or incomplete information may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the court.

20. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment.

21. Defendant understands that his compliance with each part of this Plea Agreement extends throughout and beyond the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. He further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Agreement, or to resentence the defendant. The defendant understands and agrees that in the event that this Plea Agreement is breached by the defendant, and the Government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

22. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

23. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 1/17/06

PATRICK J. FITZGERALD
United States Attorney

MICHAEL ACOSTA
Defendant

MANISH S. SHAH
Assistant United States Attorney

CYNTHIA GIACCHETTI
GEORGE COLLINS
Attorneys for Defendant